AO 106 (Rev. 07/19) Application for a Search Warrant

# United States District Court

### for the
### Western District of New York



UNITED STATES DISTRICT COURT
FILED
OCT 29 2019
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

19-m-214

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address.)*

Two HP Pavilion Tower Computers, Serial Nos.:
2M09223SM2 and BCG8461GNH

**Case No. 19-mj-167**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

*See* **Attachment A** attached hereto and incorporated herein by reference.

located in the Western District of New York, there is now concealed *(identify the person or describe the property to be seized)*:

*See* **Attachment B** attached hereto and incorporated herein by reference.

The basis for search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of 18 U.S.C. § 2252A.

The application is based on these facts:

- ☒ *See* affidavit in support of search warrant attached hereto and incorporated herein by reference.

- ☐ Delayed notice of ___ days after the collection period authorized by the warrant (give exact ending date if more than 30 days: ___) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

KAREN L. WISNIEWSKI
SPECIAL AGENT
HOMELAND SERCURITY INVESTIGATIONS
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  October 29, 2019 _____

_____
*Judge's signature*

City and state:  Buffalo, New York _____

HONORABLE H. KENNETH SCHROEDER, JR.
UNITED STATES MAGISTRATE JUDGE
_____

## ATTACHMENT A
**Property to be Searched**

A.     HP Pavilion Tower computer, Serial #: 2M09223SM2


B.     HP Pavilion Tower computer, Serial #: BCG8461GNH

**ATTACHMENT B**
**Description Of Items To Be Searched For And Seized**

a.  Visual depictions, including still images, videos, films or other recordings of child pornography or minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, and any mechanism used for the production, receipt, distribution, advertisement, or storage of the same;

b.  Records, correspondence, evidence and data pertaining to the production, possession, receipt or distribution of child pornography, in any form, as defined in 18 U.S.C. §2256, and the enticement of minors, in any form;

c.  Information pertaining to or related to an interest in child pornography or the visual depiction of the sexual exploitation of a child, including documents, records, images, videos, emails, email software, associated email addresses, email address book contents, internet history, browsing history, internet search history, cookies, deleted files, bookmarked and favorite web pages, user typed web addresses, desktop shortcuts, path and file names for files opened through any media and/or image viewing software, chat software, chat files, chat logs, chat names used, peer to peer software, peer to peer files, newsgroup postings by the user, IP addresses assigned, and other evidence pertaining to the possession of child pornography;

c.  Documents and records regarding the ownership, usage and/or possession of the searched property;

d.  Records and data pertaining to internet usage and Internet Service Providers accounts;

e.  Records and data showing the identity of any user of the SUBJECT COMPUTERS and any digital device connected to or associated with the SUBJECT COMPUTERS; and

f.  During the course of the search, photographs of the items referenced in Attachment A may also be taken to record the condition thereof and/or the location of items therein.

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

STATE OF NEW YORK )
COUNTY OF ERIE        )     SS:
CITY OF BUFFALO     )

I, **KAREN L. WISNIEWSKI**, being duly sworn, depose and state the following:

### INTRODUCTION

1.      I am a Special Agent with Homeland Security Investigations (HSI) and have
been so employed since March 2003. Prior to that, I was employed as a Special Agent with
the United States Customs Service since 1998. I am currently assigned to the Buffalo Field
Office of HSI and am assigned to the Child Exploitation Unit (CEU). As a member of the
CEU, I investigate the sexual exploitation of children, including the production, distribution,
receipt, and possession of child pornography, coercion/enticement, and the transfer of
obscene material to minors in violation of Title 18, United States Code, Sections 2251, 2252,
2252A, 2422, and 1470. I have received specialized training in the area of child pornography,
child exploitation, coercion/enticement, and I've had the opportunity to observe and review
numerous examples of child pornography, as defined in Title 18, United States Code, Section
2256.

2.      This affidavit is submitted pursuant to Rule 41 of the Federal Rules of Criminal
Procedure in support of an application for a search warrant for two Hewlett Packard Pavilion
computer towers identified by serial numbers 2M09223SM2 and BCG8461GNH (hereinafter
the "SUBJECT COMPUTERS"). The SUBJECT COMPUTERS are more particularly

described in **Attachment A** of this Affidavit. The items to be searched are anticipated to possess evidence of James STIVERS's continued criminal activities as they relate to evidence, of the possession, receipt, and distribution of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(a)(5)(B), as more specifically described in **Attachment B** of this Affidavit.

3.      The statements in this affidavit are based in part on information provided to me by other law enforcement officers and my investigation of this matter. Since this affidavit is submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts sufficient to establish probable cause that contraband, evidence, fruits and instrumentalities involving the possession, receipt, and distribution of child pornography are presently located on the SUBJECT COMPUTERS.

## THE INVESTIGATION AND FACTUAL BASIS

4.      Investigation following a report by Microsoft of an image of child pornography being uploaded via BingImage led your affiant to apply for a search warrant for the residence of STIVERS in Lockport, New York. This Court (the Honorable H. Kenneth Schroeder, Jr.) issued the search warrant at docket number 19-MJ-141 on July 25, 2019.

5.      On July 29, 2019, your affiant and other DHS Agents executed that search warrant at STIVERS's residence. During that execution, Special Agent Burnham and your affiant interviewed STIVERS. Upon entry into the home for the search warrant, SA

Wisniewski explained that HSI had a search warrant for the residence. SA Wisniewski explained to STIVERS that he was not under arrest and could leave at any time. SA Wisniewski asked STIVERS if he would like to speak with agents and discuss the purpose of the search warrant, to which he agreed. SAs Wisniewski and Burnham then interviewed STIVERS who admitted that he viewed and downloaded child pornography, that he used his computer to look at child pornography, and that he sometimes looked at child pornography involving children between the ages of 10-18. STIVERS stated that he likes to print off images of child pornography and make books out of them. After he looks at the books, he destroys them. STIVERS said that he doesn't want to share his child pornography with anyone because it belongs to him. STIIVERS uses Bing, as well as the search term Lolita, to search for child pornography. STIVERS admitted to being a registered sex offender over "something" that happened with his daughter.

6.      Pursuant to the search warrant, HSI seized various computers, electronic devices, and electronic media. HSI is still in the process of examining all of the electronic devices and other seized items. Although the forensic examination has yet to be completed, the following seized item has been determined to contain child pornography as defined by 18 U.S.C. § 2256(8): a Hewlett Packard Envy H8-1414 desktop computer. Three photos forensically recovered from that device were determined to be child pornography as defined by 18 U.S.C. 2256(8).

7.      On October 4, 2019, Your Honor issued an arrest warrant pursuant to a criminal complaint charging defendant with violating, United States Code, Section 2252A(a)(5)(B), possession of child pornography. The defendant was arrested on October 17, 2019.

8.      On October 23, 2019 your affiant received a telephone call from a law enforcement officer employed by the United States Marshals Service. The officer advised the affiant that he had been contacted by New York State Corrections Officer Anthony Franjoine who is stationed at Niagara County Jail in Lockport, NY. CO Franjoine advised that on October 22, 2019, an inmate identified as James STIVERS had requested to make a phone call to his sister in order to have her "throw out his computer" so that he could "beat his case."

9.      Upon receiving the call from the US Marshals Service, your affiant notified Assistant United States Attorney Higgins regarding the potential for destruction of evidence in the case against James STIVERS. AUSA Higgins and your affiant agreed that she should attempt to locate and take into custody whatever electronic devices STIVERS was referring to from his residence.

10.      Special Agent Ryan Green and your affiant contacted Patti Helwig, James STIVERS's sister by phone and asked her to turn over the computer that STIVERS had referred to, along with any other electronic devices, belonging to STIVERS, in the residence. Helwig agreed and exited the residence carrying 2 HP Pavilion tower computers, one bearing the tag "James Stivers" on it. Helwig stated that she wanted to turn the computers over to

4

the agents when they last spoke.  She said that she knew it was bad to have the computers in

the house and it made her sick to her stomach.  She also stated that the computers were in

STIVERS's computer room.

11.     Agents took custody of the computer towers and provided Helwig with a chain

of custody receipt for the computers.

12.     Based on the forgoing, the above information indicates that on October 22,

2019, James STIVERS verbalized his intent to law enforcement officers to have evidence

destroyed so that it would not be able to be used against him in the ongoing possession of

child pornography investigation.

13.     Therefore, there is probable cause to believe that evidence, fruits, or contraband

in violation of Title 18, United States Code, Section 2252A(a)(2)(A) and 2252A(a)(5)(B) will

be found in the SUBJECT COMPUTERS, as described in Attachment A.

## TRAINING AND EXPERIENCE

14.     Based upon my training and experience, computers, hard drives, removable

media and other electronic devices have the capacity to retain information, even after that

information has been deleted by the user.  Thus, images, videos and other files including

correspondence in the form of emails, chat logs, and records associated with coercion,

enticement, promotion of sexual activity, as well as the production, receipt, distribution and

possession of child pornography may be recovered from electronic and digital media, even if those files were previously deleted.

15. Based on my training, experience, and knowledge, and the experience of other law enforcement personnel involved in this investigation, I know that the Internet is a worldwide computer network that connects computers and allows communications and the transfer of data and information across state and national boundaries. Computer technology and the Internet revolutionized the way in which child pornography is produced, distributed, stored and communicated as a commodity and a further tool of child exploitation. For instance:

a. Individuals can transfer photographs from a camera onto a computer-readable format with a variety of devices, including scanners, memory card readers, or directly from digital cameras, including those on most cellphones.

b. Modems allow computers to connect to another computer through the use of telephone, cable, or wireless connection. Electronic contact can be made to literally millions of computers around the world.

c. The capability of a computer to store images in digital form makes the computer itself an ideal repository for child pornography. As explained further below, personal ownership and quantity of electronic media in use worldwide, and the storage capacity of home computers and other media, have increased tremendously in the last decade and continue to grow. Computer drives and other electronic storage media can store a huge amount of visual images at very high resolution.

d. The Internet, the World Wide Web and other Internet components afford individuals many different and relatively secure and anonymous venues for obtaining, viewing and trading child pornography or for communicating with others to do so or to entice children.

e. Individuals can use online resources to retrieve, store and share child pornography, including services offered by Internet Portals such as Google, America Online (AOL), Yahoo! and Hotmail, among others. Online services allow a user to set up an account providing e-mail and instant messaging services, as well as electronic storage of computer files in any variety of formats.

6

A user can set up an online storage account from any computer or cellular phone with access to the Internet. Evidence of such online storage of child pornography is often found on the user's computer. Even in cases where online storage is used, evidence of child pornography can be found on the user's computer in most instances.

f.      As is the case with most digital technology, computer communications can be saved or stored on hardware and computer storage media used for these purposes. Storing this information can be intentional, i.e., by saving an e-mail as a file on the computer or saving the location of one's favorite web sites in, for example, bookmarked files. However, digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or footprints in the web cache and history files of the browser used. Such information is often maintained for very long periods of time until overwritten by other data.

g.      The interaction between software applications and the computer operating systems often results in material obtained from the Internet being stored multiple times, and even in different locations, on a computer hard drive without the user's knowledge. Even if the computer user is sophisticated and understands this automatic storage of information on his computer's hard drive, attempts at deleting the material often fail because the material may be automatically stored multiple times and in multiple locations within the computer media. As a result, digital data that may have evidentiary value to this investigation could exist in the user's computer media despite, and long after, attempts at deleting it. A thorough search of this media could uncover evidence of receipt, distribution and possession of child pornography.

h.      Data that exists on a computer is particularly resilient to deletion. Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little to no cost. Even when such files have been deleted, they can be recovered months or years later using readily-available forensic tools. When a person deletes a file on a home computer, the data contained in the file does not actually disappear, rather, the data remains on the hard drive until it is overwritten by new data. Therefore, deleted files or remnants of deleted files, may reside in free space or slack space, that is, in space on the hard drive that is not allocated to an active file and is left unused and free to store new data. Such residual data may remain in free space for long periods of time before it is overwritten by new data. In addition, a computer's operating system may also keep a record of deleted data in a swap or recovery file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary

7

Internet directory or cache. The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity and computer habits.

## BACKGROUND ON COMPUTERS AND EVIDENCE ASSESSMENT PROCESS IN CHILD PORNOGRAPHY AND CHILD EXPLOITATION INVESTIGATION

16.     This warrant seeks permission to locate not only computer files that might serve as direct evidence of the crimes described in the warrant, but also for evidence that establishes how computing devices were used, the purpose of their use, and who used them.

17.     As described above, and in Attachment B, this application seeks permission to search and seize certain digital evidence that might be found in the SUBJECT COMPUTERS, in whatever form it is found. One form in which the records might be found is stored on a computer's hard drive, mobile computing device, or other electronic media. Some of these electronic records might take the form of files, documents, and other data that is user-generated. Some of these electronic records, as explained below, might take a form that becomes meaningful only upon forensic analysis. In addition to user-generated documents (such as messages, picture and movie files), computing devices can contain other forms of electronic evidence that are not user-generated. In particular, a computing device may contain records of how a computer or mobile device has been used, the purposes for which it was used and who has used these records, as described further in the attachments.

18. Based upon my knowledge, training, and experience, as well as information related to me by agents and others involved in the forensic examination of digital devices, I know that segregating information before commencement of the review of digital evidence by the examining agent is inconsistent with the evidence assessment process in child pornography and online child exploitation investigations. This is true in part because the items to be searched will not only contain child pornography, but also will contain the identity of the user/possessor of the child pornography as well as evidence as to the programs and software used to obtain the child pornography, which may be located throughout the areas to be searched. In addition, it is not possible to know in advance which computing device or storage media will contain evidence of the specified crimes, and often, such evidence is contained on more than one computer/device or digital storage device. Further:

a. Searching digital devices can be a highly technical process that requires specific expertise, specialized equipment and knowledge of how electronic and digital devices are often used in child pornography and online child exploitation matters. There are so many types of digital devices and software in use today that it is impossible to bring to the search site all of the necessary technical manuals and specialized equipment necessary to conduct a thorough search.

b. Because of the numerous types of digital devices and software that may contain evidence in child pornography and online child exploitation cases, it may also be necessary to consult with specially trained personnel who have specific expertise in the type of digital device, software application or operating system that is being searched in an off-site and controlled laboratory environment.

c. Because digital data is particularly vulnerable to inadvertent or intentional modification or destruction, searching digital devices can require the use of precise, scientific procedures that are designed to maintain the integrity of digital data and to recover "hidden," erased, compressed, encrypted or password-protected data. Data hiding analysis can be useful in detecting and recovering such data and may indicate knowledge, ownership, or intent. The recovery of "hidden" data is highly specialized and time-intensive. For this reason, on-site key word searches are not sufficient to recover inadvertently or intentionally modified or destroyed data. Similarly, running hash values on-site to find files that contain child pornography is not an adequate on-site review and seizure procedure, because while hash values locate previously

9

identified files of child pornography, they do not capture files that are the result of new production, images imbedded in an alternative file format, or images altered, for instance, by a single pixel. As a result, a controlled environment, such as a law enforcement laboratory, is essential to conducting a complete and accurate analysis of data stored on digital devices.

d.    The volume of data stored on many digital devices will typically be so large that it will be highly impractical to search for data during the execution of the physical search of the premises. A single megabyte of storage space is the equivalent of 500 double-spaced pages of text. A single gigabyte of storage space, or 1,000 megabytes, is the equivalent of 500,000 double-spaced pages of text. Storage devices capable of storing 500 gigabytes (GB) of data are now commonplace in desktop computers. Consequently, each non-networked, desktop computer found during a search can easily contain the equivalent of 240 million pages of data. Further, a 500 GB drive could contain as many as approximately 450 full run movies or 450,000 songs. As examining this quantity of data can take weeks or months, depending on the volume of the data stored, it would be impractical to attempt this kind of data search on-site.

e.    Electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted or viewed via the Internet. Electronic files saved to a hard drive can be stored for years with little or no cost. Even when such files have been deleted, they can be recovered months or years later using readily-available forensics tools. Normally, when a person deletes a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or cache. The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits. Recovery of residue of electronic files from a hard drive requires specialized tools and a controlled laboratory environment.

f.    Digital device users can attempt to conceal data within digital devices through a number of methods, including the use of innocuous or misleading filenames and extensions. For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text. Digital device users may also attempt to conceal data by using encryption, which means that a password or physical device, such as a "dongle" or "keycard," is necessary to decrypt the data into readable form. In addition, digital device users can conceal data within another seemingly unrelated and innocuous file in a process called "steganography." For example, by using steganography, a digital device user

10

can conceal text in an image file that cannot be viewed when the image file is opened. "Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed." A substantial amount of time is necessary to extract and sort through data that is concealed, encrypted, or subject to booby traps, to determine whether it is evidence, contraband or instrumentalities of a crime.

g.      Further, in finding evidence of how a computer has been used, the purposes for which it was used, and who has used it, sometimes it is necessary to establish that a particular thing is not present on a hard drive or that a particular person (in the case of a multi-user computer) was not a user of the computer during the time(s) of the criminal activity. For instance, based upon my knowledge, training, and experience, as well as information related to me by agents and others involved in the forensic examination of digital devices, I know that when a computer has more than one user, files can contain information indicating the dates and times that files were created as well as the sequence in which they were created, so that evidence of whether a user accessed other information close in time to the file creation dates, times and sequences can help establish user identity and exclude other users from computer usage during relevant times.

h.      Because the absence of particular data on a digital device may provide evidence of how a digital device has been used, what it has been used for, and who has used it, analysis of the digital device as a whole may be required to demonstrate the absence of particular data. Such evidence of the absence of particular data on a digital device is not segregable from the digital device.

i.      The types of evidence described above may be direct evidence of a crime, indirect evidence of a crime indicating the location of evidence or a space where evidence was once located, contextual evidence identifying a computer user, and contextual evidence excluding a computer user. All of these types of evidence may indicate ownership, knowledge, and intent. This type of evidence is not "data" that can be segregated, that is, this type of data cannot be abstractly reviewed and filtered by a seizing or imaging agent and then transmitted to investigators. Rather, evidence of this type is a conclusion, based on a review of all available facts and the application of knowledge about how a computer behaves and how computers are used. Therefore, contextual information necessary to understand the evidence described in Attachment B also falls within the scope of the warrant.

j.      Based upon my knowledge, training and experience, as well as information relayed to me by agents and others involved in the forensic examination of digital devices, I know that it is typically necessary to seize all types of electronic devices capable of storing digital evidence as described in the Affidavit and Attachment B for off-site review because computer searches involve highly technical, complex, time-consuming and dynamic processes.

11

19.     Because more than one person shares the premises as a residence, it is possible that the SUBJECT COMPUTERS will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime.  If it is nonetheless determined that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

## SEARCH METHODOLOGY TO BE EMPLOYED

20.     The SUBJECT COMPUTERS have been seized for an off-site search for evidence that is described in the attachments of this warrant.  It is anticipated that mirror copies or images of such evidence will be made if the failure to do so could otherwise potentially alter the original evidence.

21.     Consistent with the information provided within this affidavit, contextual information necessary to understand the evidence, to identify the user/possessor of the child pornography, and to establish admissibility of the evidence in subsequent legal proceedings will also be sought by investigative agents.

22.     Additional techniques to be employed in analyzing the SUBJECT COMPUTERS will include (1) surveying various file directories and the individual files they contain; (2) opening files to determine their contents; (3) scanning storage areas; (4) performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the

12

evidence described in this affidavit and its attachments; and (5) performing any other data analysis techniques that may be necessary to locate and retrieve the evidence described in this affidavit and its attachments.

23.     Because it is expected that SUBJECT COMPUTERS may constitute (1) instrumentality of the offense, (2) fruit of criminal activity, (3) contraband, or (4) evidence otherwise unlawfully possessed, it is anticipated that such evidence will not be returned to the owner and that it will be either forfeited or ultimately destroyed in accordance with the law at the conclusion of the case.  However, if after careful inspection investigators determine that the SUBJECT COMPUTERS do not contain (1) instrumentality of the offense, (2) fruit of criminal activity, (3) contraband, (4) evidence otherwise unlawfully possessed, or (5) evidence of the person who committed the offense and under what circumstances the offense was committed, then such items seized will be returned.

## CONCLUSION

24.     Based upon the forgoing, the undersigned respectfully submits that there is probable cause to believe that evidence, fruits and instrumentalities of violations of Title 18, United States Code Section 2252A(a)(2)(A) and 2252A(a)(5)(B) as specifically described in Attachment B to this application, are presently located within the SUBJECT COMPUTERS. The undersigned therefore respectfully requests that the attached warrant be issued authorizing a search for the items listed in Attachment B within the SUBJECT COMPUTERS, more particularly described in Attachment A to this application.

25.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, this Court is a district court of the United State that has jurisdiction over the offense being investigated. 18 U.S.C. § 2711(3)(A)(i).

KAREN L. WISNIEWSKI
Special Agent
Homeland Security Investigations

Sworn to before me this

39 th day of October, 2019

HON. H. KENNETH SCHROEDER, JR.
United States Magistrate Judge

14

## <u>ATTACHMENT A</u>
### Property to be Searched

A.    HP Pavilion Tower computer, Serial #: 2M09223SM2


B.    HP Pavilion Tower computer, Serial #: BCG8461GNH

**ATTACHMENT B**
**Description Of Items To Be Searched For And Seized**

a.    Visual depictions, including still images, videos, films or other recordings of child pornography or minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, and any mechanism used for the production, receipt, distribution, advertisement, or storage of the same;

b.    Records, correspondence, evidence and data pertaining to the production, possession, receipt or distribution of child pornography, in any form, as defined in 18 U.S.C. §2256, and the enticement of minors, in any form;

c.    Information pertaining to or related to an interest in child pornography or the visual depiction of the sexual exploitation of a child, including documents, records, images, videos, emails, email software, associated email addresses, email address book contents, internet history, browsing history, internet search history, cookies, deleted files, bookmarked and favorite web pages, user typed web addresses, desktop shortcuts, path and file names for files opened through any media and/or image viewing software, chat software, chat files, chat logs, chat names used, peer to peer software, peer to peer files, newsgroup postings by the user, IP addresses assigned, and other evidence pertaining to the possession of child pornography;

c.    Documents and records regarding the ownership, usage and/or possession of the searched property;

d.    Records and data pertaining to internet usage and Internet Service Providers accounts;

e.    Records and data showing the identity of any user of the SUBJECT COMPUTERS and any digital device connected to or associated with the SUBJECT COMPUTERS; and

f.    During the course of the search, photographs of the items referenced in Attachment A may also be taken to record the condition thereof and/or the location of items therein.